UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF ALABAMA

*IN RE:*

RENI THOMAS, SR.,  CASE NO. 22-11473-JCO

Debtor.  Chapter 7

_____

HAIL NAW ROOFING & REMODELING,

Plaintiff,

v.  Adv. Pro. No. 23-1010

RENI THOMAS, SR.,

Defendant.

## MEMORANDUM OPINION AND ORDER

This matter came before the court for trial of the Plaintiff's Adversary Complaint, the Debtor's Motion to Dismiss, and the Debtor's Motion for Sanctions. (Docs. 1, 29, 37). Proper notice of hearing was given and appearances were noted on the record. Upon consideration of the pleadings, record, testimony, and exhibits, this Court finds that the Motion to Dismiss lacks merit, the Plaintiff is entitled to prevail on the Adversary Complaint, and that sanctions are not warranted for the reasons set forth below:

1

## JURISDICTION

This Court has jurisdiction to hear these matters pursuant to 28 U.S.C. §§ 1334 and 157, and the Order of Reference by the District Court dated August 25, 2015. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and this Court has the authority to enter a final order.

## PROCEDURAL HISTORY AND FINDINGS OF FACT

The Debtor, Reni Thomas Sr. ("Thomas") filed Chapter 7 bankruptcy on July 22, 2022. (Case No.22-11473)[1]. His bankruptcy schedules list an unsecured debt owed to Hail Naw Roofing and Remodeling ("Hail Naw") in the amount of $16,938.36 arising from a state court judgment ("Judgment").[2] (Doc. 1 at 24). On February 9, 2023, Hail Naw filed this Adversary Proceeding, seeking to have its Judgment declared non-dischargeable under 11 U.S.C.§523(a)(2)(A). (AP doc. 1). The Adversary Complaint alleges that: (1) Thomas requested that Hail Naw perform roof work at a residence he owned at 4428 Berline Drive, Lithonia, Ga. 30038 ("Berline Property"); (2) Thomas represented that he had homeowner's insurance ("State Farm") to pay for the repairs; (3) Hail Naw completed the work in reliance on Thomas' representations that it would be paid from the insurance proceeds; (4) State Farm remitted payment for the work to Thomas; and (5) Thomas pocketed the money and sold the Berline Property without paying Hail Naw for the new roof. (*Id.* at 2.)

Thomas denied Hail Naw's allegations and sought dismissal of the Adversary Proceeding. (AP docs. 6, 21, 37). His Motion to Dismiss alleges that: (1) he contacted Hail Naw about a roof leak at the Berline Property; (2) he met with Hail Naw's representative and discussed the roof

---

[1] This is the main Chapter 7 bankruptcy case and for ease of reference all cites to "Doc." herein refer to this case number. Cites to "AP doc." shall refer to filings in the above-styled Adversary Proceeding. All exhibit references refer to exhibits introduced at the trial of the Adversary Proceeding unless otherwise noted.
[2] The Judgment was entered by the Mobile County District Court on August 23, 2021. (AP doc. 60 at 4).

damage; (3) he contacted his homeowner's insurance company about the damage; (4) a roof inspection was conducted; (5) Hail Naw had communications with State Farm about the insurance claim ; (6) Hail Naw's representative assured him that they would make sure the insurance covered the cost associated with the roof; (7) Hail Naw replaced the roof;  and (8) Thomas received checks from State Farm related to the claim. (AP doc. 21).  Thomas also alleged that: (1) he did not sign the Roofing Contract (Plaintiff's Exhibit 1) with Hail Naw; (2) he did not consent to the roof work because a price was not discussed; (3) he turned the checks he received from State Farm for the repairs over to his insurance agent, Trey Rhodes at State Farm in Newnan, Georgia; and (4) when he sold the Berline Property, he attempted to pay Hail Naw $10,441.53 from his account at Delta Community Credit Union ("DELTA CCU"). (*Id.*; AP doc. 37).

During the pendency of this Adversary, Thomas filed a Motion for Sanctions against Hail Naw.(AP doc. 43).  It alleges that Hail Naw violated the automatic stay by sending two post-petition email communications to him, referencing that he should pay his bill. (*Id*).  Such communications are part of an email chain that was initiated after Thomas viewed his billing records related to the roof work.  The attachments to the Motion for Sanctions reflect that Hail Naw's representative, James Triplett, ("Triplett") communicated with Thomas on or about October 15, 2023, asking if he had any questions about the bill to expedite payment and stated that "just viewing our invoice without submitting payment doesn't make it go away." *Id.* at 4.  Upon Thomas' response directing Triplett not to contact him and alleging the communication was harassment, Triplett replied in part, " We saw that you were looking at your outstanding invoice on multiple occasions, so assumed you wanted to do the right thing and finally pay your bill . . ." *Id.*

An evidentiary hearing was held on May 20, 2024.  Triplett testified as the owner of Hail Naw.  He stated that he is a roofing contractor, public adjuster, and has owned and operated Hail

3

Naw for 20 years. He testified that Thomas requested that he assess roof damage at the Berline Property, told him that he had insurance with State Farm to pay for repairs, called State Farm during their meeting to initiate the claim, and then passed the phone to Triplett to discuss the details. Triplett stated that Thomas signed the Roofing Contract (Plaintiff's Exhibit1) with Hail Naw to replace the Berline Property roof and that they had several communications via text and email about the State Farm claim, meeting with the adjuster, providing estimates, and selecting materials. In one particular string of text messages on October 17, 2017, Triplett confirmed the type of shingles Thomas would like, advised that they planned to tackle the Berline Property roof on the following Thursday, asked Thomas to obtain a dumpster, and reminded him to park where he would not get blocked in. (Plaintiff's Exhibit 3 at 8). The text message chain reflects Thomas' approval. (*Id.*) Triplett testified that he relied on Thomas' representation that State Farm or Thomas would pay Hail Naw for the roof work.

Triplett stated that when Hail Naw completed the roof work, Thomas signed a certificate of completion (Plaintiff's Exhibit 2 at 33), they had multiple communications thereafter about remittance of funds, but Hail Naw never received any payment. Hail Naw introduced into evidence copies of cancelled checks issued by State Farm to Thomas for the roof repairs totaling $16,409.46.(Plaintiff's Exhibit 8 at 49-51). The reverse sides of the checks reflect endorsements by the mortgagee (Regions) as well as Thomas and appear to have been negotiated by Thomas at DELTA CCU in 2017 and 2018.(*Id.*) Triplett testified that Thomas sold the Berline Property after the roof was replaced and moved to Mobile, Alabama without making payment to Hail Naw. Thereafter, Hail Naw sued Thomas in the District Court of Mobile County and obtained a judgment for $16,938.36 plus costs on August 23, 2021. (AP doc. 60 at 4). This Court finds that Triplett's testimony was forthcoming and credible.

Thomas also testified at the trial. He admitted that he contacted Hail Naw and requested an estimate for roof work in 2017 but later stated that the Berline Property did not have any roof damage. His contention that there was not any roof damage was also contrary to his Motion to Dismiss which set out that he contacted Hail Naw about a potential roof leak. (AP doc. 37 at 1). When asked about text messages allegedly sent by him to Triplett on September 19, 2017, proposing dates to meet with the State Farm adjuster in furtherance of the insurance claim, his recollection was unclear and he stated, "I can't attest to any of that." (Plaintiff's Exhibit 3). Although Thomas contended that he did not enter into a contract with Hail Naw for roof work at the Berline Property, he admitted that he emailed Triplett asking him to send documents to his mortgage company (Regions Bank) regarding the roof work "as soon as possible." (Plaintiff's Exhibit 4).

Thomas stated in his discovery responses and again at the trial that he did not receive any insurance monies as a result of the roof damage at the Berline Property but then admitted he received checks from State Farm totaling $16,409.46. When testifying about what happened to the insurance checks, Thomas first stated, " …they were turned over to the Regions on Airport and from that point, I could not tell you what happened." Such testimony conflicts with the endorsements and information on the reverse side of the checks reflecting that they were negotiated at DELTA CCU, where Thomas held an account. (Plaintiff's Exhibit 8). Additionally, when Plaintiff's counsel pointed out that Thomas' testimony was inconsistent with his discovery responses, stating that he turned the insurance funds over to State Farm, Thomas could not adequately explain the discrepancy. (Plaintiff's Exhibit 6 at 3; AP doc. 45 at 1). Thomas alleged that he attempted to make a payment of $10,441.53 to Triplett for the roof work but did not provide any documentary evidence to support his testimony. Thomas did not call any witnesses or offer

5

Case 23-01010   Doc 61   Filed 07/22/24   Entered 07/22/24 15:30:24   Desc Main
Document      Page 5 of 13

any exhibits in defense of the Adversary Complaint or in support of the damages requested in his Motion for Sanctions. The Court finds that much of Thomas' testimony was difficult to reconcile.

It is undisputed that on August 23, 2021, the District Court of Mobile County, Alabama entered a Judgment against Thomas, in favor of Hail Naw Roofing in the amount of $16,938.36 plus costs ("Judgment"). (AP doc. 60 at 4). The basis for the state court Judgment was breach of the same Roofing Contract which Thomas seeks to contest in this Adversary. The state court Judgment is a final judgment entered by a court of competent jurisdiction on the merits after trial. There is no allegation that the Judgment is invalid or that it has otherwise been paid or satisfied.

The Roofing Contract, which the state court Judgment upheld, contemplates that Hail Naw agreed to assist the homeowner with the insurance claim, perform the roof work, and be paid from the insurance proceeds.(Plaintiff's Exhibit. 1 at 1). The terms of the Roofing Contract also provide in part that "The homeowner is not responsible for any delays from their insurer as far as payment but must make all reasonable efforts to help H.N.R [Hail Naw] collect all payments due from the insurance company." (*Id.* at 2, para 13).

## CONCLUSIONS OF LAW

### *Thomas' Motion to Dismiss Is Due to be Denied.*

Courts reviewing motions to dismiss must accept the allegations in the complaint as true and construe them in the light most favorable to the plaintiff. *In re Mona Lisa at Celebration, LLC*, 410 B.R. 710, 713 (Bankr. M.D. Fla. 2009)(citing *Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 450 F.3d 1257, 1262 (11th Cir.2006); *Roberts v. Fla. Power & Light Co.*, 146 F.3d 1305, 1307 (11th Cir.1998)). Disposition of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)

focuses only upon the allegations in the complaint and whether those allegations state a claim for relief. A discharge under §727 of the Bankruptcy Code does not discharge an individual debtor from any debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud. 11 U.S.C. 523(a)(2)(A). Initiation of an adversary proceeding is required to "determine the dischargeability of a debt." *Fed. R. Bankr. P. 7001 (6)*.

Thomas' Amended Motion to Dismiss does not state any legal ground upon which dismissal is sought. (AP doc. 37). He seemingly seeks dismissal based on his assertions that there was not a valid contract between the parties and that the Plaintiff committed insurance fraud. Such allegations would, if applicable, be more appropriately employed as affirmative defenses or counter-claims. Notwithstanding the foregoing, this Court evaluates Thomas' Motion to Dismiss under Rule 12(b)(6), made applicable by Federal Rule of Bankruptcy Procedure 7012.[3] The Adversary Complaint sets out specific conduct giving rise to the action, asserts that Thomas obtained services from the Plaintiff by false pretenses, false representation, and/or actual fraud, alleges that Hail Naw relied on the Debtor's representations, that it would receive the insurance proceeds, in completing the work; and provides the statutory basis for the relief sought under 11 U.S.C. §523(a)(2)(A). Thus, when viewed most favorably to the Plaintiff, the Adversary Complaint sets out sufficient facts and allegations to state a claim upon which relief can be granted. Accordingly, the Motion to Dismiss must be denied.

---

[3] This Opinion does not discuss other grounds for dismissal as none were cited the Thomas and the Court does not find any other Rule 12 ground applicable as this Court has subject matter and personal jurisdiction, venue is proper, the parties were properly served and present, proper notice of the trial setting was given, and there are no other necessary parties to the action.

*Collateral Estoppel Bars Re-litigation of the Validity of the Roofing Contract.*

Collateral estoppel prevents courts from relitigating issues which have already been fully adjudicated. It is well established that the doctrine of collateral estoppel applies in a discharge exception proceeding in bankruptcy court. *In re Bilzerian*, 100 F.3d 886, 891 (11th Cir. 1996) (citing *Grogan v. Garner*, 498 U.S. 279, 284 n. 11, 111 S.Ct. 654, 658 n. 11, 112 L.Ed.2d 755 (1991); *Hoskins v. Yanks* (*In re Yanks*), 931 F.2d 42, 43 n. 1 (11th Cir.1991)). Collateral estoppel applies when: (1) the issue in the prior action and the issue in the bankruptcy court are identical; (2) the issue was actually litigated in the prior action; (3) the determination of the issue in the prior action was a critical and necessary part of the judgment in that litigation; and (4) the burden of persuasion in the discharge proceeding is not significantly heavier than the burden of persuasion in the initial action. *Id.*

Here the issue of the validity of the Roofing Contract has already been decided by the state court. The Plaintiff pursued state court litigation against Thomas alleging breach of the Roofing Contract, the matter was litigated to finality, and the state court ruled in Hail Naw's favor and entered the pre-petition state court Judgment against Thomas. (Doc. 60 at 4). Thomas thereafter unsuccessfully appealed. There is no dispute that the state court Judgment is a final order entered by a court of competent jurisdiction and remains unsatisfied. The Full Faith and Credit Act mandates that the "judicial proceedings" of any State "shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken." 28 U.S.C. §1738.*Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 373, 116 S. Ct. 873, 877, 134 L. Ed. 2d 6 (1996). Although Thomas attempts to contest the validity of the Roofing Contract in this proceeding, that ship has already sailed. The Plaintiff's state court

8

complaint clearly set out a one count cause of action for breach of the Roofing Contract. (AP doc. 60). Thus, the state court Judgment in Hail Naw's favor necessarily constituted a finding that the Roofing Contract was a valid contract between the parties and Thomas breached it causing damages to Hail Naw. Any contests or defenses to the Plaintiff's state court complaint for breach of the Roofing Contract could or should have been raised by Thomas during the state court litigation.[4] The evidence before this Court establishes that Thomas had the opportunity to present a defense or contest to the validity of the Roofing Contract in the state court. Since he was unsuccessful in doing so, he is precluded from attempting to relitigate that issue in this proceeding. Even though the state court has already held that the Roofing Contract is valid, every breach of contract does not necessarily give rise to nondischargeability. *In re Roberts*, 594 B.R. 484, 487 (Bankr. N.D. Fla. 2018). This Court must still decide whether the state court Judgment is dischargeable in Thomas' Bankruptcy.

*Non-Dischargeability of the Judgment is Warranted Under 11 U.S.C. §523(a)(2)(A)*

Although the purpose of bankruptcy is to provide *the honest but unfortunate debtor* with a fresh start, certain debts are excepted from discharge. 11 U.S.C. §523; *Brown v. Felsen*, 442 U.S. 127, 128, 99 S. Ct. 2205, 2208, 60 L. Ed. 2d 767 (1979); *In re Harris*, 3 F.4th 1339, 1344 (11th Cir. 2021) (citing *Grogan v. Garner*, 498 U.S. 279, 284 n.11, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)(noting that the Bankruptcy Code's non-dischargeability provisions evidence Congressional recognition that some categories of debt, "outweigh[ ] the debtors' interest in a complete fresh start."); *In re Bilzerian*, 100 F.3d 886, 891 (11th Cir. 1996) (citing *In re St. Laurent*, 991 F.2d 672, 680 (11th Cir. 1993), as corrected on reh'g (June 22, 1993)( explaining, "we will not allow the

---

[4] This Court does not have the benefit of all of the pleadings or transcript from the state court litigation and presumes that Thomas likely raised the same arguments in that court that he seeks to assert here, but even if he did not, he is precluded from attacking the validity of the Judgment at this juncture.

9

Case 23-01010    Doc 61    Filed 07/22/24    Entered 07/22/24 15:30:24    Desc Main
Document    Page 9 of 13

malefic debtor [to] hoist the Bankruptcy Code as protection from the full consequences of fraudulent conduct."). Exceptions to discharge are construed narrowly and in favor of the debtor. *In re St. Laurent* at 680. To prevail on a non-dischargeability claim against an individual debtor on allegations that a debt was obtained by false pretenses, a false representation, or actual fraud, the plaintiff must establish by a preponderance of the evidence that the debtor: (1) used false pretenses, made false representation, or committed actual fraud: (2) that Plaintiff relied on the debtor's conduct; (3) that the reliance was justified; and (4) that the Plaintiff suffered a loss as a result. §523(a)(2)(A); *In re Harris* at 1344. The Plaintiff's reliance on the Debtor's representations need not be reasonable but only justifiable. *Field v. Mans*, 516 U.S. 59, 116 S. Ct. 437, 446 N. 12; 133 L. Ed. 2d 351, (1995)(citing *Chiles v. Kail*, 34 Wash.2d 600, 606, 208 P.2d 1198, 1201–1202 (1949) ("[the] test is not what a reasonable and prudent man would have done but whether plaintiff, in the condition he was in, had a right to rely").

In this case, Triplett's testimony was credible and supported by his exhibits while Thomas' inconsistent pleadings, and conflicting testimony were unconvincing. The record, pleadings, exhibits, and testimony establish by a preponderance of the evidence that Thomas: (1) sought the services of Hail Naw for roof repairs; (2) advised Triplett that he had insurance with State Farm to pay for the roof work; (3) facilitated Triplett's communications with State Farm in furtherance the insurance claim for the roof work; (4) represented to Triplett that Hail Naw would be compensated for the new roof from the State Farm insurance proceeds; and (5) misallocated the State Farm insurance checks that he received for the roof repairs. It was also shown by a preponderance of the evidence that Hail Naw completed the roof work in justifiable reliance of Thomas' representations that it would be paid from the State Farm insurance claim.

The provisions in the Roofing Contract further support Hail Naw's claim that it performed the roofing work in reliance on Thomas' misrepresentations.[5] The plain language of the Roofing Contract reflects that Hail Naw would assist with the insurance claim and would be paid from the insurance proceeds. (Plaintiff's Exhibit 1 at 2). It also states that Thomas agreed to " make all reasonable efforts to help H.N.R [Hail Naw] collect all payments due from the insurance company." (*Id.* at 2, para. 13). Upon consideration of all the evidence, this Court concludes that Thomas obtained money, property, and services by inducing Hail Naw to perform roof work on the Berline Property and assist with an insurance claim, by false pretenses, false representation, or actual fraud, and that Hail Naw justifiably relied on Thomas' actions and was harmed as a result. Thus, the state court Judgment is due to be excepted from discharge under §523(a)(2)(A).

*Section 362(k) Does Not Authorize An Award Of Damages To An Individual Who Has Not Been Injured By A Willful Violation Of The Stay.*

The filing of a petition in bankruptcy "operates as a stay … of ... any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a); *In re Jacks*, 642 F.3d 1323, 1328 (11th Cir. 2011); *In re Swilling*, No. 07-11273-WRS, 2008 WL 4999090, at 3 (Bankr. M.D. Ala. Nov. 20, 2008). The Bankruptcy Code provides that "[a]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."11 U.S.C. § 362(k)(1). Courts adjudicating stay violations have held that such actions are willful if the violator: (1) knew of the automatic stay and

---

[5] This Court understands that Thomas disputes the Roofing Contract; however, as discussed previously, the State Court already adjudicated the validity of the Roofing Contract in favor of Hail Naw.

(2) intentionally committed the violative act, regardless of whether the violator specifically intended to violate the automatic stay. *In re Jove Eng'g, Inc.,* 92 F.3d 1539, 1555 (11th Cir.1996). The plain language of the Bankruptcy Code explicitly requires, as a prerequisite to maintaining such an action, that a debtor must have first been "injured" by the stay violation. 11 U.S.C. §362 (k)(1); *In re Hutchings*, 348 B.R. 847, 881 (Bankr. N.D. Ala. 2006); see also, *In re Flack*, 239 B.R. 155, 163 (Bankr. S.D. Ohio 1999)(citing *In re Hamrick*, 175 B.R. 890, 893 (W.D.N.C.1994); see also *In re Brock Utilities & Grading, Inc.*, 185 B.R. 719, 720 (Bankr.E.D.N.C.1995)( [s]anctions are not imposed for willful violations where the debtor has not been injured by issuance of collection correspondence)).

In *Hutchings*, the debtor received ten prohibited phone calls and five items of correspondence during a two-month timeframe relating to collection of a mortgage debt. *In re Hutchings* at 880. The court concluded that such communications constituted violations of the automatic stay but that Mr. Hutchings could not recover compensatory damages, expenses, or attorney's fees because he was not injured by the stay violations. *Id.* at 881. The Hutching's Court stated that,

> By its plain language, the "actual damages, including costs and attorneys' fees..." available to a debtor through section 362(h)[6] of the Bankruptcy Code, are restricted to "[a]n individual injured by any willful violation of a stay...." 11 U.S.C. § 362[k] (emphasis added). Consequently, by its terms section 362[k] does not authorize an award of "actual damages, including costs and attorneys' fees..." to an individual who has not been injured by a willful violation of the stay. 11 U.S.C. § 362[k].

*Id.* at 882.

---

[6] Pursuant to Bankruptcy Code Amendments after the date of the cited opinion, the referenced Code Section is now denoted as §362(k); and the remainder of the quotation is updated accordingly.

Thomas contends that he is entitled to $16,000.00 in damages for the two email communications from Hail Naw as alleged in his Motion for Sanctions. (AP doc. 43). Hail Naw was aware of Thomas' bankruptcy and its representative, Triplett, intended to send the communications to Thomas. As a result, Hail Naw willfully violated the automatic stay. Despite the technical violation, Thomas failed to establish that he suffered any injury or actual damages therefrom. His request for $16,000.00 is unsupported by the record. Although the monetary amount sought approximates the amount of the pre-petition state court Judgment Hail Naw obtained against Thomas, there is no evidence before this Court that Thomas suffered any injury as a result of the stay violation. Thus, Thomas has not proven the requisite elements under §362(k) and is not entitled to an award of sanctions. Notwithstanding the foregoing, this Court cautions Hail Naw and Triplett to be mindful of the applicability of the automatic stay in this and any other bankruptcy proceedings to avoid future violations.

## **CONCLUSION**

Based on the above, it is hereby ORDERED, ADJUDGED, AND DECREED as follows:

1. Thomas's Motion to Dismiss is DENIED;

2. Hail Naw's State Court Judgment against Thomas is hereby declared non-dischargeable under §523(a)(2)(A); and

3. Thomas' Motion for Sanctions is DENIED.

Dated: July 22, 2024

_____
JERRY OLDSHUE
CHIEF U.S. BANKRUPTCY JUDGE